IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
MONIQUE HOLSEY-HYMAN,                        )
                                             )
                        Plaintiff,           )
                                             )
        v.                                   )   1:24cv296
                                             )
JARROD B. EDENS, EDENS INVESTMENTS,          )
INC., SARA M. YOUNG, Individually and        )
in her official capacity as City of          )
Durham Planning Director;                    )
KIMBERLY M. REHBERG, Individually and        )
in her official capacity as                  )
City Attorney for Durham; JILLIAN N.         )
JOHNSON, Individually and in her             )
Official capacity as a member of             )
Durham City Council; MARK A. MIDDLETON,      )
Individually and in his                      )
official capacity as a member of Durham      )
City Council and Mayor Pro Tempore;          )
and THE CITY OF DURHAM,                      )
a Municipal Corporation,                     )
                                             )
                        Defendants.          )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Before the court are motions to dismiss by Defendants Kimberly Rehberg (Doc. 13) and Sara Young, Mark Middleton, Jillian Johnson, and the City of Durham (collectively, the "Durham Defendants). (Doc. 15.) Plaintiff Dr. Monique Holsey-Hyman filed responses in opposition to both motions (Docs. 23, 24), and Rehberg and the Durham Defendants filed replies. (Docs. 28, 30.) For the reasons

set forth below, both motions to dismiss will be granted in part, and the case will be remanded to state court.

I.  BACKGROUND

The facts, viewed in the light most favorable to Dr. Holsey-Hyman as the non-moving party, show the following:

Dr. Holsey-Hyman is a former member of the Durham City Council ("Council").  (Doc. 5 ¶¶ 1, 182.)  She joined the Council by applying for a vacant seat, and she was sworn in as a member on May 12, 2022.  (Id. ¶¶ 32–34.)  She stood for election the following cycle, but, despite a vigorous campaign, was not elected.  (Id. ¶ 182.)

Despite her extensive experience in education and community engagement, Dr. Holsey-Hyman had not held political office before her appointment to the Council.  (Id. ¶¶ 25–33.)  By her own account, she "was not as familiar with property issues as she was with education and social work issues that came before the Council."  (Id. ¶ 35.)  So she routinely "relied on her fellow council members to provide her" with "knowledge and guidance" on pending property development matters.  (Id.)  Dr. Holsey-Hyman's fellow Council members were Mayor Elaine O'Neal, DeDreana Freeman, Leonardo Williams, Javiera Caballero, Defendant Johnson, and Defendant Middleton.  (Id. ¶¶ 36–37.)

According to Dr. Holsey-Hyman, Council members predictably voted on property issues.  (Id.)  By her account, Middleton,

2

Johnson, Williams, and Caballero "routinely voted for development." (Id. ¶ 36.) O'Neal and Freeman, on the other hand, "frequently voted against large development projects." (Id. ¶ 37.) For her own part, Dr. Holsey-Hyman was usually in the middle; "[s]he took each development issue that came before the Council one-by-one." (Id. ¶ 38.)

In early 2023, Defendant Jarrod Edens submitted a "request for a utility extension agreement, voluntary annexation and zoning map change" (the "Carpenter Falls measure") to the Council.[1] (Id. ¶ 46.) In Dr. Holsey-Hyman's estimation, Edens "stood to lose a significant amount of money" if the Carpenter Falls measure was not approved by the Council. (Id. ¶ 49.) The Council was slated to vote on the measure on March 6, 2023. (Id. ¶ 46.)

According to Dr. Holsey-Hyman, Middleton, Williams, Johnson, and Caballero supported the Carpenter Falls measure. (Id. ¶ 50.) But O'Neal, Freeman, and Dr. Holsey-Hyman wanted to "look at the development more closely." (Id.) Dr. Holsey-Hyman claims that Edens was aware of this 4-3 split. (Id. ¶ 51.)

For reasons unstated in the complaint, it became apparent that Johnson would not attend the March 6, 2023 meeting. (Id. ¶ 52.) With Johnson absent, the Carpenter Falls measure would likely fail by a 3-3 vote. (Id.) Because Edens allegedly knew

---

[1] Edens has not joined either motion to dismiss and has separately filed an answer. (Doc. 12.)

3

that "O'Neal and [Freeman] were not going to be swayed," he attempted to contact Dr. Holsey-Hyman to ask for her support. (Id. ¶ 53-56.).

Dr. Holsey-Hyman returned Edens's call around noon on March 6, 2023. (Id. ¶ 60.) During the call, Dr. Holsey-Hyman told Edens that she had decided to run to retain her Council seat and that she had a campaign kickoff event scheduled for March 12, 2023. (Id.) Edens indicated that he wanted to support her campaign for Council. (Id. ¶ 61.) Dr. Holsey-Hyman joked "that she did not think that he could support her because she did not want to go to jail," and both laughed. (Id.) Edens told Dr. Holsey-Hyman that he sponsored a football team and suspected that the parents and players, many of whom were African American, would be willing to support her at her kickoff event. (Id. ¶ 62.) He also asked her to speak at the team's upcoming awards banquet. (Id.)

When the conversation turned to the Capenter Falls measure, Dr. Holsey-Hyman asked Edens general questions about the development. (Id. ¶ 63.) She alleges that Edens did not ask her to vote a certain way on the measure, and she did not commit or imply that she would vote for or against it. (Id.) She also denies "stat[ing] or impl[ying] she would vote yes for the [Carpenter Falls measure] in exchange for any contribution or other favors." (Id.) After the call ended, Dr. Holsey-Hyman texted

4

Edens an announcement for her campaign and upcoming launch event. (Id. ¶ 64.)

The Carpenter Falls measure was discussed at the Council meeting later that evening. (Id. ¶ 65.) Edens gave a presentation, and citizens offered comments, most of which opposed the measure. (Id.) Dr. Holsey-Hyman asked Edens questions about the project, "addressing the same issues" she had during their earlier call. (Id. ¶ 66.) Supposedly anticipating that Dr. Holsey-Hyman would vote against the measure, Middleton expressed frustration that Council members were opposed to it. (Id.) Despite Middleton's advocacy for the proposal, the Council voted 3-3, and the Carpenter Falls measure failed. (Id. ¶ 67.) Middleton, Williams, and Caballero voted in favor of the measure, and O'Neill, Freeman, and Dr. Holsey-Hyman voted against it. (Id.)

Edens emailed Dr. Holsey-Hyman the next day, requesting that they "check in." (Id. ¶ 69.) Dr. Holsey-Hyman "did not see the email and did not respond." (Id.) Edens emailed her again on March 8th, and Dr. Holsey-Hyman again did not see or respond to the email. (Id. ¶ 70.)

According to Dr. Holsey-Hyman, Edens called Young, Durham's City Planning Director, on March 11, 2023. (Id. ¶ 71.) During the call, Eden alleged that in their March 6th phone call Dr. Holsey-Hyman attempted to solicit a contribution to her campaign in exchange for her support of the Carpenter Falls measure. (Id.)

5

Dr. Holsey-Hyman adamantly denies this accusation. (Id. ¶ 72.) She asserts that the accusation initiated a concerted effort by Edens, Young, Rehberg, Middleton, and Johnson to have her removed from the Council. (Id. ¶ 168.)

On March 12, 2023, Young relayed the accusation to Rehberg, Durham's city attorney. (Id. ¶ 81.) After learning of the allegations, Rehberg prepared a memorandum that she circulated to the Council. (Id. ¶ 90.) Dr. Holsey-Hyman alleges that the letter "contain[ed] numerous false and defamatory statements and insinuations that were intended to embarrass and humiliate [her]." (Id.) The memorandum reported that a councilmember had been accused of extortion by a local developer, advised that councilmembers should not engage "in group chat or text thread discussions during public hearing deliberations," and alleged that a "City employee was recently disciplined for engaging in campaign-related activities for a current City Councilmember while on the job." (Id. at 60–62.) The memorandum did not identify Dr. Holsey-Hyman or any other member of the Council. (Id. ¶ 92.) Dr. Holsey-Hyman alleges that it was implied or readily apparent to readers that the extortion and improper campaigning accusations were being made against her. (Id.)

The Council was divided on the best approach to the allegations. Middleton advocated for Dr. Holsey-Hyman's resignation. (Id. ¶¶ 107, 110.) Freeman and O'Neal preferred a

6

Case 1:24-cv-00296-TDS-JLW    Document 33    Filed 01/15/25    Page 6 of 16

more measured approach. (Id. ¶¶ 126-27.) Eventually, the Council voted privately to refer the matter for investigation by the North Carolina State Bureau of Investigation ("SBI"). (Id. ¶ 127.) Dr. Holsey-Hyman claims that Johnson leaked the allegations to the press while the SBI investigation was pending. (Id. ¶ 148.)

Dr. Holsey-Hyman alleges that Johnson and Middleton drafted a "false and defamatory formal Resolution of Censure" against her. (Id. ¶ 139.) This censure addressed the allegation that she had a city employee perform work for her campaign on the city's time, not the allegation that she had extorted a developer. (Id. ¶ 150.) Dr. Holsey-Hyman denies this accusation. (Id. ¶ 144.) Johnson introduced the censure resolution at a Council meeting on March 23, 2023. (Id. ¶ 150.) In response, "Dr. Holsey-Hyman made a statement succinctly denying any wrongdoing." (Id. ¶ 152.) Middleton then made an unspecified statement implying that Dr. Holsey-Hyman had in fact asked staff to perform campaign work during work hours. (Id. ¶ 153.) Middleton also "voiced strong support for the Resolution of Censure." (Id. ¶ 154.) The Council never voted on the Resolution of Censure, but Dr. Holsey-Hyman contends "it was intentionally brought before the Council to defame, disparage, denigrate, humiliate, and embarrass [her]." (Id. ¶ 159.) The resolution was covered extensively by the media. (Id. ¶ 164.)

In May, the Carpenter Falls measure was again presented to

the Council.  (Id. ¶ 169.)  On May 12, 203, "O'Neal announced," for the first time publicly, "that [Edens] was the developer that had made the allegations against Dr. Holsey-Hyman."  (Id.)  Three days later, the Council voted on and passed the annexation request.  (Id.)

On September 15, 2023, the SBI completed its investigation into the allegations against Dr. Holsey-Hyman.  (Id. ¶ 170.)  As summarized by Satana Deberry, Durham's district attorney, the report concluded that "there [was] no evidence that [Dr. Holsey-Hyman] solicited a campaign contribution from [Edens] or that she attempted to extort anything from him in exchange for her vote on his development project."  (Id. at 68.)  Further, the report concluded that there was "no evidence that Holsey-Hyman solicited campaign work from a city employee" or that "there was a coordinated effort led by another Council Member to initiate allegations against Holsey-Hyman."  (Id.)  Even still, Dr. Holsey-Hyman lost the election for her seat in the wake of these events.  (Id. ¶ 182.)

On March 5, 2024, Dr. Holsey-Hyman filed this lawsuit in the General Court of Justice, Superior Court Division, for Durham County.  (Doc. 1 ¶ 2.)  Her complaint asserts claims for slander, libel, retaliation for the exercise of First Amendment rights in violation of 42 U.S.C. § 1983, civil conspiracy, intentional or negligent infliction of mental and emotional distress, and breach

8

of fiduciary duty.[2]  (Doc. 5 ¶ 186–304.)  Defendants removed the action, asserting that Dr. Holsey-Hyman's First Amendment retaliation claim brought pursuant to section 1983 provides a basis for this court' subject matter jurisdiction.  (Doc. 1 ¶ 4–6.) Defendants also argue that the court possesses supplemental jurisdiction over Dr. Holsey-Hyman's remaining claims.  (Doc. 1 ¶ 7–11.)

**II. ANALYSIS**

Rehberg and the Durham Defendants move for dismissal of all of Dr. Holsey-Hyman's claims.  The court begins by assessing their motion to dismiss the claim that serves as the basis of this court's jurisdiction: Dr. Holsey-Hyman's section 1983 claim alleging retaliation in violation of the First Amendment.

**A.  First Amendment Retaliation Claim**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[2] The complaint also seeks punitive damages against all Defendants. (Doc. 5 305–313.)  Dr. Holsey-Hyman concedes that punitive damages are unavailable against Defendant City of Durham.  (Doc. 24 at 24.)

9

Id. (citing Twombly, 550 U.S. at 556 (2007)).  A Rule 12(b)(6) motion to dismiss "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true."  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted).

To state a First Amendment retaliation claim pursuant to section 1983, a plaintiff must allege that (1) "[she] engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [her] First Amendment rights, and (3) there was a causal relationship between [her] protected activity and the defendants' conduct."  Bhattacharya v. Murray, 93 F.4th 675, 687–88 (4th Cir. 2024) (quoting Davison v. Rose, 19 F.4th 626, 636 (4th Cir. 2021)) (internal quotation marks omitted).

Defendants argue that Dr. Holsey-Hyman's claim fails at the first step — her claimed expressive act is not protected by the First Amendment.  They point out that the complaint alleges that the Defendants retaliated against her for voting "no" on the Carpenter Falls measure.  (Doc. 14 at 24–25; Doc. 16 at 11.)  Relying on Nevada Commission on Ethics v. Carrigan, 564 U.S. 117, 129 (2011), Defendants argue that Dr. Holsey-Hyman's vote was not activity protected by the First Amendment and her claim must therefore fail.  (Doc. 14 at 24–25; Doc. 16 at 11.)

Dr. Holsey-Hyman offers two counterarguments.  First, she contends that Carrigan is inapposite because it involved a First

10

Amendment challenge to a Nevada ethics law requiring that a city council member recuse himself from voting and "there was no issue of Dr. Holsey-Hyman needing to recuse herself from the initial March 6, 2023 vote." (Doc. 23 at 26; Doc. 24 at 15.) Second, she contends she made comments at the Council meeting that criticized property development, which she argues is protected First Amendment activity that prompted the Defendants to retaliate. (Doc. 23 at 27-28; Doc. 24 at 15-17.)

In Carrigan, the Supreme Court squarely held that legislators' votes on pending business are not protected by the First Amendment. 564 U.S. at 125-27. In addressing the Nevada ethics restriction, the Court concluded that "restrictions upon legislators' voting are not restrictions upon legislators' protected speech." Id. at 125. The Court reasoned that a "legislator's vote is the commitment of his apportioned share of the legislature's power to the passage or defeat of a particular proposal" and that "[t]he legislative power thus committed is not personal to the legislator but belongs to the people; the legislator has no personal right to it." Id. at 125-26. This result is consistent with Raines v. Byrd, 521 U.S. 811, 821 (1997), the Court noted, where Article III standing was denied to legislators claiming their voting power had been diluted by a statute providing for a line-item veto because a legislator casts his vote "as trustee for his constituents, not as a prerogative of

11

personal power." Id. at 126 (quoting Raines, 521 U.S. at 821). The Court thus distinguished a legislator's vote from that of a citizen. "While a voter's franchise is a personal right," the Court observed, "[t]he procedures for voting in legislative assemblies . . . pertain to legislators not as individuals but as political representatives executing the legislative process." Id. (quoting Coleman v. Miller, 307 U.S. 433, 469-70 (1939) (opinion of Frankfurter, J.)); see also Linthicum v. Wagner, 94 F.4th 887, 892-93 (9th Cir. 2024) (applying Carrigan to hold that a legislator's vote and related actions that "implicate[] the 'governmental mechanics' of the legislative process" are not protected by the First Amendment, regardless of whether the legislator intends for the acts to convey a message).

Accordingly, Dr. Holsey-Hyman cannot rely on her vote against the Carpenter Falls measure as activity entitled to First Amendment protection. Here, Dr. Holsey-Hyman's First Amendment claim (Seventh Claim of Relief) is squarely predicated on her vote as a Council member: "Dr. Holsey-Hyman's vote of 'no' was free speech protected by The First Amendment." (Doc. 5 ¶ 272.) Because her vote is not activity protected by the First Amendment, her retaliation claim necessarily fails.

Neither of Dr. Holsey-Hyman's counterarguments is persuasive. She contends that Carrigan is solely applicable when a recusal statute is at issue. But Carrigan's holding is not so limited.

12

Dr. Holsey-Hyman's contention is in tension with the Supreme Court's recognition that a "legislator has no personal right" to the individual exercise of legislative power. Carrigan, 564 U.S. at 126. Furthermore, her argument, made in her briefing, that her retaliation claim also relies on her comments at Council meetings is an improper effort to amend the allegations of her complaint. As Defendants point out, the complaint repeatedly alleges that Dr. Holsey-Hyman "had a First Amendment right to vote on the [Carpenter Falls measure] as she chose" and that the Defendants "retaliate[ed] against Dr. Holsey-Hyman for her 'no' vote." (Doc. 5 ¶¶ 271-72, 274.) Nowhere does she allege that she was retaliated against for her speech. Her effort to switch tactics in her response in opposition to Defendants' motion to dismiss after the deficiency was pointed out is prohibited. See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

Even had Dr. Holsey-Hyman alleged that she was retaliated against for her protected speech at the Council meeting, Defendants are correct that her claim would fail because she does not allege that her speech was the "but for" cause of their retaliation. (Doc. 14 at 25-26); Raub v. Campbell, 785 F.3d 876, 885 (4th Cir. 2015) (stating that First Amendment retaliation claims require the claimant to show that "but for" her protected expression, the

13

defendant would not have taken the purportedly retaliatory action); Porter v. Bd. of Trs. of N.C. State Univ., 72 F.4th 573, 583 (4th Cir. 2023) (same); Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1141 (4th Cir. 1990) (same). This "causal requirement is 'rigorous.'" Raub, 785 F.3d at 885 (quoting Huang, 902 F.2d at 1140). Not only does the complaint fail to allege "but for" causation, it alleges additional reasons Defendants targeted her. (See, e.g., Doc. 5 ¶ 104 (alleging that Rehberg was motivated to have Dr. Holsey-Hyman removed from the Council because she opposed an effort to give Rehberg a raise); (id. ¶ 168 (alleging that the Defendants were motivated by her "no" vote on the Carpenter Falls measure separate and apart from her general anti-development sentiments).) "[I]t is not enough that the protected expression played a role or was a motivating factor in the retaliation;" Dr. Holsey-Hyman had to allege "that 'but for' the protected expression the [defendants] would not have taken the alleged retaliatory action.'"[3] See Porter, 72 F.4th at 583 (first alteration in original) (quoting Raub, 785 F.3d at 885). Because she did not do so, she has failed to plead a plausible claim of

---

[3] Rehberg argues, in a footnote, that she is entitled to qualified immunity. (Doc. 14 at 26 n.7.) Immunity questions are not ordinarily relegated to such treatment. Because the court has determined that Dr. Holsey-Hyman has not plausibly alleged that Rehberg violated her First Amendment rights, Rehberg's immunity contention need not be addressed further. See Evans v. Chalmers, 703 F.3d 636, 646 (4th Cir. 2012) ("[I]f a plaintiff fails to allege that an official has violated any right," the court's analysis of the immunity claim "ends right then and there." (citation and internal quotation marks omitted)).

14

First Amendment retaliation claim.

## B. Remaining State Law Claims

Where a court dismisses the sole claim that can serve as the basis for the court's original jurisdiction, it may decline to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. 28 U.S.C. § 1367(c)(3). Doing so is appropriate here. Dr. Holsey-Hyman's remaining state law claims are for slander, libel, civil conspiracy, intentional and negligent infliction of emotional distress, and breach of fiduciary duty. (Doc. 5 ¶¶ 186–268, 287–304.) Those claims present quintessential questions of North Carolina law that are best answered by the North Carolina state courts in the first instance. Moreover, this case is at its earliest stages, and judicial efficiency warrants remand. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (4th Cir. 1988), superseded on other grounds by statute, Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, 102 Stat 4642 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."). Accordingly, the court will remand Dr. Holsey-Hyman's remaining claims to the Durham County Superior Court. Accord Royal Canin U.S.A., Inc. v. Wullschleger, No. 23-677, \_\_ U.S. \_\_, slip

op. at 8 (Jan. 15, 2025) (noting that, under section 1367(c), the district court "may (indeed, ordinarily should) kick the case to state court" (quoting Mine Workers v. Gibbs, 383 U.S. 715, at 726-27 (1966))).

### III. CONCLUSION

For the reasons stated,

IT IS ORDERED that Defendants' motions to dismiss (Docs. 13, 15) are GRANTED insofar as they seek dismissal of Dr. Holsey-Hyman's First Amendment retaliation claim brought pursuant to section 1983, and the Seventh Claim for Relief is DISMISSED. Having resolved Dr. Holsey-Hyman's sole federal claim, the court declines to exercise supplemental jurisdiction over her remaining state law claims, and Defendants' motions are to that extent DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that this action is REMANDED to the General Court of Justice, Superior Court Division, of Durham County. 28 U.S.C. § 1367(c)(3).

IT IS FURTHER ORDERED that the Durham Defendants' motion to amend their reply brief (Doc. 31) is DENIED AS MOOT.

    /s/ Thomas D. Schroeder
    United States District Judge

January 15, 2025